BRIDGET MURPHY V. J. H. EVANS CITY STEAM LAUNDRY COMPANY.

FILED NOVEMBER 4, 1897. No. 7506.

Married Women: LIMITATION OF ACTIONS. Since the enactment, in 1871, of the Married Woman's Act, permitting married women to sue in the same manner as if they were unmarried, the statute of limitations runs against women during coverture, notwithstanding an earlier statute (Code of Civil Procedure, sec. 17) in terms allowing to infants, married women, insane persons, and prisoners the general periods of limitation after the removal of such disabilities.

ERROR from the district court of Douglas county. Tried below before AMBROSE, J. *Affirmed.*

*E. Wakeley* and *A. C. Wakeley*, for plaintiff in error.

*C. F. Breckenridge* and *Greene & Breckenridge, contra.*

IRVINE, C.

Title 2 of the Code of Civil Procedure relates to the time of commencing civil actions. It constitutes our general statute of limitations. Section 17 thereof, so far as it is material to the present inquiry, is as follows: "If a person entitled to bring any action mentioned in

this title, except for a penalty or forfeiture, be at the time the cause of action accrued, within the age of twenty-one years, a married woman, insane, or imprisoned, every such person shall be entitled to bring such action within the respective times limited by this title after such disability shall be removed." This section was enacted as a part of the Code in 1858 (Session Laws, p. 111, sec. 18), and has remained without express amendment, as to the part quoted, ever since. In 1871 there was enacted what is commonly known as the "Married Woman's Act" (Session Laws, 1871, p. 68, Compiled Statutes, ch. 53). By section 3 of this act it is provided that "a woman may while married sue and be sued in the same manner as if she were unmarried." The sole question presented by the case before us is whether this provision of the Married Woman's Act had the effect of removing married women from the protection of section 17 of the Code; above quoted. This question is raised by a demurrer to the petition, which disclosed on its face that the action was barred unless allegations of plaintiff's coverture for some time after the injury complained of prevented the running of the statute. The district court sustained the demurrer and we think its judgment must be affirmed.

Section 602 of the Code gives to district courts power to vacate or modify their judgments after the term at which they were rendered for certain specified causes; among them: "Fifth—For erroneous proceedings against an infant, married woman, or person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings." In 1877 there was before this court for review an order vacating a decree of foreclosure, upon a petition by the defendants, one of whom was a married woman. The court, after disposing of the case adversely to the defendants so far as the other grounds of complaint were concerned, said: "It is, however, urged in the argument for defendants, that as defendant Elizabeth Hooper is a married woman, being the wife of Richard, the other defendant, this ac-

tion by original petition may be maintained under sub-
divisions three and five of section six hundred and two
of the Civil Code.   *   *   *   The power to vacate or mod-
ify judgments under the provisions of subdivision five is
confined to 'erroneous proceedings against an infant,
married woman, or persons of unsound mind,' and this
provision was intended for the protection of persons sub-
ject to legal disability; but by section three of the act of
June 1, 1871, it was enacted that 'a married woman may,
while married, sue and be sued, in the same manner as
if she were unmarried.' Therefore this act of 1871 has
wholly removed the common law disability of a married
woman, and consequently she no longer comes within the
protection of the provisions of this subdivision." (*Pope
v. Hooper*, 6 Neb., 178.) It is argued that this language
was *obiter*, but we cannot so regard it. The coverture of
the one defendant was urged as justifying the vacation of
the decree independently of the other causes alleged, and
the court spoke in answer to that contention. The decis-
ion of the point was essential to a determination of the
case. That the court then so regarded it is evident from
the language of Judge MAXWELL, who dissented in *Pope
v. Hooper*, and who, speaking for the court in *Omaha Horse
R. Co. v. Doolittle*, 7 Neb., 481, said: "In *Pope v. Hooper*, 6
Neb., 187, it is held that the act of 1871 wholly removed
the common law disability of married women." The
same construction was placed upon the case in *Morse v.
Engle*, 28 Neb., 534, although the facts of that case did
not call for an application of the rule. In *Smithson v.
Smithson*, 37 Neb., 535, the court was called upon to con-
strue section 609 of the Code, whereby "proceedings to
vacate or modify a judgment or order, for the causes
mentioned in subdivisions four, five, and seven of section
six hundred and two, must be commenced within two
years after the judgment was rendered or order made,
unless the party entitled thereto be an infant, married
woman, or person of unsound mind, and then within two
years after removal of such disability." Of this it was

said: "This section appears in its present form in the Revised Statutes of 1866, hence the exception in favor of married women can have no force at this time, in view of subsequent statutes removing the disabilities imposed upon them at common law." In *Real v. Hollister*, 17 Neb., 661, the court held that the act of 1871 abrogated section 48 of chapter 73, Compiled Statutes, providing that "a married woman shall not be bound by any covenant in a joint deed of herself and husband." The bearing of these decisions upon the case before us is too plain for discussion. If those decisions are to be adhered to we must hold that the act of 1871, by permitting married women to sue as if unmarried, so operated upon section 17 of the Code as to nullify its exception in favor of married women.

Counsel concede the logical force of those decisions if they should be followed, but argue that they are wrong in principle, opposed to the better authority, especially in view of our constitutional provisions concerning the amendment and repeal of laws, and that they should be disregarded and the question examined anew. We do not think that the matter is one justifying such a course. The first decision on the subject was rendered soon after the act of 1871 went into effect, and fully twenty years ago. Other cases have followed promising a steady adherence to the doctrine so established. That doctrine based the construction uniformly placed upon the statute throughout its history, and has become a rule of property. (*Geisen v. Heiderich*, 104 Ill., 537, Breese, J., in *Castner v. Walrod*, 83 Ill., 171.) Titles have been settled and contentions set at rest in reliance upon the rule. Great mischief might result from now overturning it, while even if it be wrong on principle, adherence to it at this time can work no harm. In New York and Indiana—perhaps elsewhere—decisions indicating a view such as we are now asked to take were followed by the enactment of statutes expressly removing married women from the protection theretofore afforded them by the statute of

limitations, and there can be little doubt that had *Pope v. Hooper* been otherwise decided, our own legislature would long ago have brought the law into the condition in which that case actually placed it.

AFFIRMED.